## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 1999-KA-01487-SCT

*ANTHONY J. EDWARDS a/k/a ANTHONY JEROME EDWARDS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/12/1999 |
| TRIAL JUDGE: | HON. KATHY KING JACKSON |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ROSS PARKER SIMONS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  W. GLENN WATTS |
| DISTRICT ATTORNEY: | KEITH MILLER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/13/2001 |
| MOTION FOR REHEARING FILED: | 9/28/2001; denied 11/29/2001 |
| MANDATE ISSUED: | 12/14/2001 |

**BEFORE BANKS, P.J., SMITH AND EASLEY, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. On January 19, 1999, Anthony Jerome Edwards ("Edwards") was tried by a jury in the Circuit Court of Jackson County, Mississippi, the Honorable Kathy King Jackson, presiding, for the crime of burglary of a dwelling. Edwards was convicted by the jury and sentenced by the court to serve a term of twenty-five (25) years as a habitual offender pursuant to Miss. Code Ann. § 99-19-81 (2000). From that conviction and sentence, Edwards appealed to this Court and raises the following issues.

### STATEMENT OF THE ISSUES

**I. WHETHER EDWARDS'S CONVICTION FOR BURGLARY OF A DWELLING MUST BE REVERSED BECAUSE:**

**A. THE STATUTES USED TO UNDERGIRD EDWARDS'S CONVICTION ARE UNCONSTITUTIONALLY VAGUE IN THEIR USE OF LANGUAGE TO DEFINE WHAT CONSTITUTES A DWELLING.**

**B. THE PROOF WAS INSUFFICIENT AS A MATTER OF LAW TO SHOW THAT EDWARDS COMMITTED THE CRIME OF BURGLARY OF A DWELLING BECAUSE**

**THE STATE DID NOT PROVE THAT EDWARDS ENTERED A DWELLING, AN ESSENTIAL ELEMENT OF THE CRIME. CONSEQUENTLY THE TRIAL COURT ERRED IN DENYING EDWARDS'S REQUEST FOR A JNOV.**

**C. THE VERDICT OF GUILTY OF BURGLARY OF A DWELLING WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE ADDUCED AT EDWARDS'S TRIAL, AS THE SHED HE WAS CONVICTED OF ENTERING PROVIDED NO INGRESS TO THE DWELLING WHICH WAS THE SUBJECT OF THE INDICTED BURGLARY. CONSEQUENTLY, THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING THE MOTION FOR A DIRECTED VERDICT, A REQUEST FOR A PEREMPTORY INSTRUCTION (D-1) AND A MOTION FOR A NEW TRIAL.**

**II. THE TRIAL COURT ERRED IN DENYING EDWARDS HIS RIGHT TO REPRESENT HIMSELF, AS GUARANTEED BY ARTICLE 3, SECTION 26 OF THE MISSISSIPPI CONSTITUTION AND THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION. THE TRIAL COURT'S RULING WAS CLEARLY ERRONEOUS AS IT APPLIED THE INCORRECT STANDARD OF LEGAL COMPETENCE, RATHER THAN THE CORRECT STANDARD OF MENTAL COMPETENCE, IN DENYING EDWARDS THIS RIGHT.**

**III. IN THAT HE WAS SENTENCED TO SERVE A TERM OF 25 YEARS IN THE MDOC FOR ENTERING A SHED TO STEAL A FISHING POLE, EDWARDS IS ENTITLED TO A PROPORTIONALITY ANALYSIS AS DICTATED BY *SOLEM v. HELM*. UNDER THIS ANALYSIS, HIS SENTENCE FAILS TO COMPORT WITH ARTICLE 3, SECTION 28 OF THE MISSISSIPPI CONSTITUTION AND THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

**IV. EDWARDS WAS PUNISHED WITH THE MAXIMUM SENTENCE POSSIBLE FOR PROCEEDING TO TRIAL, RATHER THAN ENTERING A PLEA OF GUILTY TO THESE CHARGES, IN VIOLATION OF THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AS WELL AS ARTICLE 3, SECTIONS 14, 16 AND 31 OF THE MISSISSIPPI CONSTITUTION.**

## FACTS

¶2. **Bo Howell** ("Howell), the victim, stated that on June 12, 1997, he heard his dog barking. Howell had hung the lock on the door latch that night. At the time Howell left the shed, he had turned the light off, shut the door and placed the lock on the hasp. From his kitchen window, Howell saw a light on in the utility room about ten to twelve feet away. The door was open to the utility shed. Howell opened a door that leads to the carport, which was two to three feet away from the utility shed. The kitchen door leads out to the breezeway and the utility door just a few steps away. When Howell opened the door, a young man ran away and grabbed a bicycle parked behind Howell's car. A few fishing spinning reels were stacked by the utility door. Earlier that evening Howell's son had placed the reels over the rafters in the utility room. A big boiler pot that had been hanging up in the utility room was also by the reels. Howell did not get a good look at the young man's face. Howell's son heard him hollering and woke-up.

¶3. Howell reviewed a number of exhibits depicting his house, the breezeway and the utility room. Later,

Howell gave the police a statement. Howell described that the utility room is attached to the rest of the house connected by the same roof line. The utility building and the house were framed together. There is a breezeway between the two but it is all connected. Everything was built together as one unit.

¶4. **Derrick Bonds** ("Bonds"), Howell's neighbor, testified that he lives one house away from Howell. About 2:30 a.m. Bonds heard his dogs and other neighborhood dogs barking as he was getting ready to go to work. He went inside to get his lunch box and when he came out of the house again, he saw Howell's porch light on and a man running. He heard Howell hollering at the man. Then, Bonds observed the man run by Howell's truck, take a bike and go onto Woodlawn Street. The man turned onto Oakwood Street and then turned onto Danzler Street. The man was black, wearing a dark-colored shirt and blue jeans and had a ten speed bicycle. Approximately ten minutes after seeing the man, Bonds identified the man for the police on Danzler Street. Bonds could not identify the face of the man, but he identified the bicycle and the clothing of the man that ran from Howell's house.

¶5. **Brian Montgomery** ("Officer Montgomery"), a captain in the Moss Point Police Department, testified that he received a dispatch call for a burglary in progress at the corner of Oakwood and Woodlawn Streets. The suspect was described as being a black male wearing a purple shirt and blue jeans and riding a bicycle toward the high school. The officer could see Danzler Street from his car. Officer Montgomery waited on Stonewall Street approximately five minutes and saw a person on a bicycle turn from Danzler Street to Stonewall Street. Officer Montgomery turned on his car lights and drove toward the bicyclist. The bicyclist made a U-turn to Danzler Street as soon as Officer Montgomery turned on his headlights. The officer stopped the bicyclist at about 2:47 a.m. The bicyclist was wearing clothing that was almost identical to the description dispatched on the radio.

¶6. Officer Montgomery identified the defendant, Edwards, as the man on the bicycle and stopped by him. Bonds came to the scene approximately ten minutes later and told another officer, Cushman, that Edwards was the person leaving the house.

¶7. **Chuck Coleman** ("Officer Coleman"), a Moss Point police officer, testified that he interviewed Edwards concerning a burglary that occurred on June 12, 1997, on Woodlawn Avenue in Jackson County. Edwards told him that he saw a light on in a utility type room attached to the house, touched some rods and reels, saw the homeowner, ran and was later stopped by police. The officer read his interview with Edwards into the record. The police read and Edwards signed a *Miranda* form. Edwards stated that he saw the carport light on, walked into the open door of the shed, touched the rods, and left when a man came out of the house. Later, Edwards stated that he "grabbed" the rods. Edwards stated that he was trying to "make a little hustle" and was going to sell the rods at the flea market for money.

## LEGAL ANALYSIS

### I. WHETHER EDWARDS'S CONVICTION FOR BURGLARY OF A DWELLING MUST BE REVERSED.

### A. THE STATUTES USED TO UNDERGIRD EDWARDS'S CONVICTION ARE UNCONSTITUTIONALLY VAGUE IN THEIR USE OF LANGUAGE TO DEFINE WHAT CONSTITUTES A DWELLING.

¶8. Edwards was indicted and found guilty under Miss. Code Ann. § 97-17-23 (2000) for burglary of a

dwelling. This crime carries a maximum sentence of twenty-five (25) years. The statute reads as follows:

> Every person who shall be convicted of breaking and entering the dwelling house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether there shall be at the time some human being in such dwelling house or not, with intent to commit some crime therein, shall be punished by imprisonment in the Penitentiary not less than three (3) years nor more than twenty-five (25) years.

Miss. Code Ann. § 97-17-23 (2000). The definition of a dwelling house is defined in Miss. Code Ann. § 97-17-31 (2000) as follows:

> Every building joined to, immediately connected with, or being part of the dwelling house, shall be deemed the dwelling house.

In comparison, burglary of a non-dwelling, other than a house of worship, carries a maximum sentence of seven (7) years. Miss. Code Ann. §  97-17-33 (1) (2000) reads as follows:

> (1) Every person who shall be convicted of breaking and entering, in the day or night, any shop, store, booth, tent, warehouse, or other building or private room or office therein, water vessel, commercial or pleasure craft, ship, steamboat, flatboat, railroad car, automobile, truck or trailer in which any goods, merchandise, equipment or valuable thing shall be kept for use, sale, deposit, or transportation, with intent to steal therein, or to commit any felony, or who shall be convicted of breaking and entering in the day or night time, any building within the curtilage of a dwelling house, not joined to, immediately connected with or forming a part thereof, shall be guilty of burglary, and imprisoned in the penitentiary not more than seven (7) years.

¶9. Edwards asserts that he did not commit the crime of burglary of a dwelling. He claims that entry into a utility storage shed connected to the dwelling by a common roof and having no direct ingress to the house does not constitute burglary of a dwelling. Edwards also argues that Miss Code Ann. § 97-17-31, the statute defining dwelling house, is unconstitutionally vague. In specific, he contends that the phrases chosen by the Mississippi Legislature to distinguish an outbuilding from a dwelling creates a statutory scheme that is unconstitutionally vague. Edwards claims that the phrases contained within the statute of "joined to", "immediately connected with" and "forming a part thereof" do not offer guidance to the question of whether a storage shed is a dwelling. Rather, Edwards claims that these phrases create confusion and only a broad construction of the phrases would allow the storage shed to be considered a dwelling.

## STANDARD OF REVIEW

¶10. This Court in *Jones v. State*, 710 So.2d 870, 877 (Miss. 1998), set out the standard for determining the constitutionality of a statute as follows:

> A party challenging the constitutionality of a statute must prove his case by showing the unconstitutionality of the statute beyond a reasonable doubt. *Vance v. Lincoln County Dep't of Pub. Welfare*, 582 So.2d 414, 419 (Miss.1991). 'This Court will strike down a statute on constitutional grounds only where it appears beyond all reasonable doubt that such statute violates the constitution.' *Wells v. Panola County Bd. of Educ.*, 645 So.2d 883, 888 (Miss.1994).We adhere here to the rule that one who assails a legislative enactment must overcome the strong presumption of validity and such assailant must prove his conclusion affirmatively, and clearly establish it beyond a

reasonable doubt. All doubts must be resolved in favor of the validity of a statute. If possible, courts should construe statutes so as to render them constitutional rather than unconstitutional if the statute under attack does not clearly and apparently conflict with organic law after first resolving all doubts in favor of validity. *Loden v. Mississippi Pub. Serv. Comm'n*, 279 So.2d 636, 640 (Miss.1973) (citations omitted); *see also* **Hoops**, 681 So.2d at 536.

*See also* **Corry v. State,** 710 So.2d 853, 859 (Miss. 1998); **Nicholson v. State**, 672 So.2d 744, 750 (Miss. 1996)(statutes have a presumption of validity overcome only by showing unconstitutionality beyond a reasonable doubt). This Court in **Reining v. State**, 606 So.2d 1098, 1103 (Miss. 1992), provided guidance in cases involving criminal statutes as follows:

> Although a statute imposing criminal penalties must be strictly construed in favor of the accused, it should not be so strict as to override common sense or statutory purpose. *United States v. Brown*, 333 U.S. 18, 25, 68 S.Ct. 376, 380, 92 L.Ed. 442, 448 (1948); see also *State v. Burnham*, 546 So.2d 690, 692 (Miss.1989). Strict construction means reasonable construction. *State v. Martin*, 495 So.2d 501, 502 (Miss.1986). This Court has held that the test concerning statutory construction is whether a person of ordinary intelligence would, by reading the statute, receive fair notice of that which is required or forbidden. *Burnham*, 546 So.2d at 692; *Roberson v. State*, 501 So.2d 398, 400 (Miss.1987); *Cassibry v. State*, 404 So.2d 1360, 1368 (Miss.1981).

¶11. This case appears to be a case of first impression for this Court. The key factor is whether a building is characterized as a dwelling. This Court has defined what constitutes a "dwelling" in certain instances. The intention of the dweller is considered to be material in the Court's determination of whether a building is characterized as a dwelling pursuant to the burglary statute. *Gillum v. State*, 468 So.2d 856, 859 (Miss. 1985)(citing *Robinson v. State*, 364 So.2d 1131 (Miss. 1978)); *Washington v. State*, 753 So.2d 475, 477 (Miss. Ct. App. 1999). While this Court has defined a dwelling in terms of the time period of habitation of the building and owner's intent, there appears to be no prior cases determining whether a utility shed with a common roof is considered part of the dwelling. *See Gillum v. State*, 468 So.2d at 859 (weekend home where owners spent every second or third weekend and had food, clothing and other necessities was a dwelling); *Course v. State*, 469 So.2d 80 (Miss. 1985)(home was dwelling house even though victim lived in nursing home for the past few months where she kept personal possessions in the home and intended to return to the home if her health improved); *Washington v. State*, 753 So.2d 475 (Miss. Ct. App. 1999)(building that owner occupied for ten to fifteen weeks a year to visit family in Mississippi was a dwelling); *Wilkerson v. State*, 724 So.2d 1089 (Miss. Ct. App. 1998)(house was dwelling where owner lived four months a year, received mail and kept personal items). *But see State v. Pool*, 764 So.2d 440 (Miss. 2000)(farmhouse not considered dwelling where owner moved to an apartment four years prior to alleged burglary and there was no evidence that owner intended to return to the farm); *Woods v. State*, 186 Miss. 463, 191 So. 283 (1939)(newly erected home intended as a dwelling but not yet occupied is not considered a dwelling house).

¶12. Edwards asserts that to interpret the burglary of a dwelling statute to include a shed would construe the statute in favor of the State and against the accused; would be an unreasonable construction of the legislative interest in protecting the sanctity of the living quarters of a home; and would override common sense and statutory purpose.

¶13. The jury in the case sub judice was given instructions of lesser-included offenses of burglary and

attempted petit larceny. Therefore, the question of whether Edwards was guilty of burglary of a dwelling, burglary, or attempted petit larceny was a factual question decided by the jury in its deliberations. Based on the evidence provided, the jury found Edwards guilty of burglary of a dwelling.

¶14. The testimony at trial revealed that the structure at issue was a house with a breezeway and a utility shed. Howell, the property owner, testified that the utility shed is attached to the house. There is a breezeway between the house and the utility shed, however, the two are connected by a common roof and ceiling. Further, the utility shed and the house were framed together.

¶15. The trial court ruled at the hearing on the Motion for New Trial that the shed was sufficiently connected to the house to find a burglary of a dwelling. The trial court stated, in part, the following:

> BY THE COURT: The case law is, if the shed is attached to the house and under the same roof-that's the law as I understand it to be-it is part of a dwelling and that makes it a burglary of a dwelling. Now, you don't like that ruling. I don't-it makes no difference to me, but that is the law. Now, if the supreme court-you're going to have a great case on the facts... If the supreme court wants to change that, this is the perfect case to change it. Because, you're right, that shed is not directly connected to that house. That's what the evidence is. There is a breezeway between the shed and the house. But the shed is under the roof of that house. And the case law, as I understand it right now, and on the day we tried your case, made that shed part of that dwelling, which made you guilty of burglary of a dwelling.

¶16. It would be hard to imagine that a person of ordinary intelligence would not know that a shed, part of an overall building structure with a house, breezeway and shed, would not be considered a dwelling. Edwards claims that the statutory scheme is vague in terms of distinguishing an outbuilding from a dwelling. The statutes clearly defines a dwelling house as "every building *joined to, immediately connected with, or being part of* the dwelling house, shall be deemed the dwelling house" and does not bolster his argument. Miss. Code Ann. § 97-17-31(2000) (emphasis added). When reading Miss. Code Ann. § 97-17-23, § 97-17-31, and § 97-17-33 (2000) in conjunction with one another, the pertinent language is § 97-17-33 which states that a person breaking and entering "any building *within the curtilage of a dwellings, not joined to, immediately connected with or forming a part thereof*, shall be guilty of burglary." (emphasis added). Therefore, a non-dwelling house is a building that is not joined to, immediately connected with or forming a part of a dwelling house. The Legislature makes a clear delineation between outbuildings and dwelling houses in distinguishing the structures based on whether they are joined to, immediately connected with or forming a part thereof.

¶17. This Court finds that Edwards failed to prove that the statutory scheme is unconstitutionally vague or overbroad beyond a reasonable doubt. The Legislature adequately distinguished an outbuilding as opposed to a dwelling. There is not an unreasonable construction, and common sense and statutory purpose have not been overridden in this instance. Therefore, this issue is without merit.

> ### B. THE PROOF WAS INSUFFICIENT AS A MATTER OF LAW TO SHOW THAT EDWARDS COMMITTED THE CRIME OF BURGLARY OF A DWELLING BECAUSE THE STATE DID NOT PROVE THAT EDWARDS ENTERED A DWELLING, AN ESSENTIAL ELEMENT OF THE CRIME. CONSEQUENTLY THE TRIAL COURT ERRED IN DENYING EDWARDS REQUEST FOR A JNOV.

¶18. Edwards asserts that he preserved his right to test the sufficiency of the evidence in his Motion for a

JNOV. He claims that the State had insufficient proof as to whether the shed was part of a dwelling house, an element of the crime. Further, Edwards asserts that a burglary of a dwelling as opposed to a general burglary are separate and distinct statutes, and therefore, his case should be reversed and rendered instead of remanded for resentencing under a different statute. Edwards relies heavily upon *Carr v. State*, 770 So.2d 1025 (Miss. Ct. App. 2000) and *State v. Pool*, 764 So.2d 440 (Miss. 2000).

¶19. For clarity of the issues, Edwards claims in this issue that the proof was insufficient as a matter of law and the trial court erred in denying his request for a judgment notwithstanding a verdict. In the subsequent issue Edwards complains that the overwhelming weight of the evidence does not support a conviction and the trial court abused its discretion in denying a Motion for Directed Verdict, a request for peremptory instruction (D-1), and a Motion for a New Trial. The issues of whether the trial court erred in denying the Motion for Directed Verdict, the request for peremptory instructions, and the Motion for JNOV pertain to legal sufficiency and are more appropriately addressed together. Whereas the issue of the Motion for New Trial pertains to the overwhelming weight of the evidence and will be addressed accordingly in the next issue.

## STANDARD OF REVIEW

¶20. The standard of review for a JNOV and a directed verdict are the same and implicate the sufficiency of the evidence. *Sheffield v. State*, 749 So.2d 123, 125 (Miss. 1999). This Court in *McClain v. State*, 625 So.2d 774, 778 (Miss. 1993) held that a motion for JNOV, motion for directed verdict and a request for peremptory instruction challenge the legal sufficiency of the evidence. *See also Coleman v. State*, 697 So.2d 777, 787 (Miss. 1997)(standard of review for denial of directed verdict, peremptory instruction, and JNOV are identical). "Since each requires consideration of the evidence before the court when made, this Court properly reviews the ruling on the last occasion the challenge was made in the trial court. This occurred when the Circuit Court overruled [the] motion for JNOV." *McClain*, 625 So.2d at 778 (citing *Wetz v. State*, 503 So.2d 803, 807-08 (Miss. 1987)). On the issue of legal sufficiency, this Court held in *Pinkney v. State*, 538 So.2d 329, 353 (Miss. 1988), that reversal can only occur when evidence of one or more of the elements of the charged offense is such that 'reasonable and fair minded jurors could only find the accused not guilty." (citations omitted). The elements of burglary are (1) the unlawful breaking and entering; and (2) the intent to commit some crime when entry is attained. *Harrison v. State*, 722 So.2d 681, 685 (Miss. 1998); *Washington v. State*, 753 So.2d 475, 478 (Miss. Ct. App. 1999).

¶21. Edwards cites *Carr* for the holding that each element of the burglary of the dwelling must be proven. *Carr*, 770 So.2d at 1029. In addition, Edwards relies upon *Carr* for the holding that "[p]roof that the structure was, at the time of the alleged crime, a dwelling house was an essential element of the crime as to which the State had the burden of proof beyond a reasonable doubt." *Id*. *See also State v. Pool*, 764 So.2d 440, 443 (Miss. 2000).

¶22. This Court has interpreted the scope of a dwelling house in prior case law as discussed in the previous issue. Edwards, however, merely asserts that the State's proof was legally insufficient as to whether the shed was a dwelling. Since Edwards raised the sole issue of whether there was sufficient proof that the shed was a dwelling, this Court will not have an extended analysis on the issue presented. Without reiterating the findings and case law in the prior issue, this Court finds that the shed is part of the dwelling and therefore, the argument is without merit.

¶23. The jury made a determination as to Edwards's guilt of burglary of a dwelling notwithstanding

additional instructions given for a burglary and petit larceny. In addition, the statutory scheme was not unconstitutionally vague in defining a dwelling versus an outbuilding pursuant to the applicable statutes. Finally, this Court finds that because the statute was not vague and the fact that the shed is considered to be a part of the dwelling within the meaning of the statutes, Edwards's argument that the State failed to prove an element of the crime, namely that a dwelling was not entered, is illogical under the interpretation and without merit. In addition, Edwards's assertion that his case should be reversed and rendered hinges upon a finding that the State failed to prove a dwelling was entered. This Court finds that the issue is without merit in light of the factual findings and our determinations in this case.

### C. THE VERDICT OF GUILTY OF BURGLARY OF A DWELLING WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE ADDUCED AT EDWARDS'S TRIAL, AS THE SHED HE WAS CONVICTED OF ENTERING PROVIDED NO INGRESS TO THE DWELLING WHICH WAS THE SUBJECT OF THE INDICTED BURGLARY. CONSEQUENTLY, THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING THE MOTION FOR A DIRECTED VERDICT, A REQUEST FOR A PEREMPTORY INSTRUCTION (D-1) AND A MOTION FOR A NEW TRIAL.

¶24. As stated in the last issue, this Court will address Edwards's assertion that the trial court abused its discretion in denying his Motion for New Trial asserting that the verdict was against the overwhelming weight of the evidence. The focus of Edwards's claim is that the shed offered no ingress to the house, access from the shed to the house was physically impossible, and the connection between the two was by a tenuous line of roof.

### STANDARD OF REVIEW

¶25. A motion for new trial challenges the weight of the evidence. *Sheffield v. State*, 749 So.2d at 127. A reversal is warranted only if the lower court abused its discretion in denying a motion for new trial. *Id*. (citing *Gleeton v. State*, 716 So.2d 1083 (Miss. 1998)). This Court held in *McFee v. State*, 511 So.2d 130, 133 (Miss. 1987), that it has limited authority to interfere with a jury verdict. The Court looks at all the evidence in the light that is most consistent to the jury verdict. *Id*. The prosecution is given "the benefit of all favorable inferences that may reasonably be drawn from the evidence." *Id*.

> [I]f there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb.

*Id*. at 133-34.

¶26. In the case sub judice, the evidence met the weight of the evidence test for a new trial. The owner, Howell, testified that the he heard his dog bark and something fall in his utility shed. He had placed the lock in the hasp, closed the door and the light were turned off in the shed that night. When he looked out of his house through a window, Howell saw the lights on in the shed and the door open. The door to the shed is approximately two to three feet from the door to the house. When Howell opened the door of the house, he saw a young man come out of the utility shed. Howell saw some fishing poles stacked by the utility door. Earlier that evening Howell's son had placed the poles over the rafters in the shed. A big boiler pot that normally hung in the shed was on the ground.

¶27. Howell testified that there is a breezeway between the house and the utility shed and all are connected together. The house and the shed were framed at the same time. The utility room is attached to the house. The ceiling of the house, carport, and roof are the same.

¶28. A neighbor, Bonds, saw a man run from Howell's house and leave on a bicycle. The man was wearing a dark colored shirt, blue jeans and had a ten speed bicycle. Officer Montgomery, stopped a man on a ten speed bicycle wearing a purple shirt and blue jeans. Bonds later identified the bicycle and clothing of the man, although he could not identify the man's face.

¶29. Officer Coleman testified that he interviewed Edwards about the burglary. Edwards told Officer Coleman that he saw a light on in the shed, went into the shed, touched some rods and left when a man came out of the house. Edwards stated he was trying to "make a little hustle" and intended on selling the rods at a flea market.

¶30. The jury had the option of finding Edwards not guilty or guilty of burglary of a dwelling, burglary, or petit larceny. Based on all evidence given at trial, the jury found Edwards guilty of burglary of a dwelling beyond a reasonable doubt. This Court finds that the lower court did not abuse its discretion in denying a motion for new trial. Looking at all the evidence in the light that is most consistent with the jury verdict, there is substantial evidence in the record that reasonable and fair-minded jurors would have found Edwards guilty of burglary of a dwelling. Accordingly, this issue is without merit.

> **II. WHETHER THE TRIAL COURT ERRED IN DENYING EDWARDS HIS RIGHT TO REPRESENT HIMSELF, AS GUARANTEED BY ARTICLE 3, SECTION 26 OF THE MISSISSIPPI CONSTITUTION AND THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION. WHETHER THE TRIAL COURT'S RULING WAS CLEARLY ERRONEOUS AS IT APPLIED THE INCORRECT STANDARD OF LEGAL COMPETENCE, RATHER THAN THE CORRECT STANDARD OF MENTAL COMPETENCE, IN DENYING EDWARDS THIS RIGHT.**

¶31. Edwards asserts that he was denied his right to represent himself at trial. In addition, Edwards complains that the trial court committed reversible error by applying an incorrect legal competence standard in lieu of the correct mental competence standard. In his brief, Edwards cites eight alleged instances in the record where he claims he asserted his right to represent himself in pretrial and post-trial hearings.

¶32. Article 3, Section 26 of the Mississippi Constitution states:

> In all criminal prosecutions the accused shall have a right to be heard by himself or counsel, or both...

In *Faretta v. California*, 422 U.S. 806, 819-20, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the United States Supreme Court held:

> The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense...Although not stated in the Amendment in so many words, the right to self-representation-to make one's own defense personally-is thus necessarily implied by the structure of the Amendment. The right to defense is given directly to the accused; for it is he who suffers the consequences if the defense fails.

¶33. In order for a defendant to knowingly and intelligently waive the right to counsel, the defendant must

meet a test for competency to stand trial. ***Brooks v. State***, 763 So.2d 859, 865 (Miss. 2000); ***Howard v. State***, 701 So.2d 274, 280 (Miss. 1997).

> The test for competency to stand trial mandates that a defendant be one '(1) who is able to perceive and understand the nature of the proceeding; (2) who is able to rationally communicate with his attorney about the case; (3) who is able to recall relevant facts; (4) who is able to testify in his own defense if appropriate; and (5) whose ability to satisfy the foregoing criteria is commensurate with the severity and complexity of the case.'

***Brooks***, 763 So.2d at 865 (quoting ***Conner v. State***, 632 So.2d 1239, 1248 (Miss. 1993)).

¶34. However, that a trial court may forego a competency test in certain circumstances. As this Court said in ***Conner***, 'the real question, therefore, is whether 'reasonable grounds' existed to believe that [the accused] was insane. If so, then Rule 4.08 mandates a competency hearing. The determination of what is 'reasonable,' of course, rests largely within the discretion of the trial judge. He sees the evidence first hand; he observes the demeanor and behavior of the defendant.' 632 So.2d at 1248. For purposes of reviewing a decision to forego a competency hearing, this Court has cited the test applied by the Fifth Circuit Court of Appeals: "Did the trial judge receive information which, objectively considered, should reasonably have raised a doubt about defendant's competence and alerted him to the possibility that the defendant could neither understand the proceedings, appreciate their significance, nor rationally aid his attorney in his defense?" ***Id.*** at 1248 (citing ***Lokos v. Capps,*** 625 F.2d 1258, 1261 (5th Cir. 1980)).

¶35. However, this Court finds that the issue is without merit. The Motion for New Trial and the Motion for JNOV do not reflect that Edwards raised the issue of a right to represent himself.

¶36. At the July 21, 1998, motion hearing to amend the indictment to charge habitual offender status, the trial court also addressed the issue of representation for Edwards. A defense attorney informed the court that Edwards had apparently "fired" him. The trial court asked Edwards about a letter in which he wanted to fire everyone in the court system. When the trial judge asked Edwards on the record whether he was planning to represent himself, Edwards responded that "I might have to." A lengthy discussion ensued in which Edwards agreed to speak to Mr. Knochel with the understanding that if he did not like the representation then he would have to hire his own lawyer.

¶37. On November 17, 1998, a second hearing occurred. The trial court never ruled on the amendment to the indictment at the July hearing. This earlier hearing focused on the issue of representation for Edwards. At the November hearing, the trial court listened to Edwards's concerns about his case. In regard to the representation for Edwards, the trial court and Edwards exchanged the following remarks in pertinent part:

> BY THE COURT: Mr. Edwards, Mr. Gautier is going to represent you. Now, listen to me. Do you feel comfortable with Mr. Gautier so far?
>
> BY THE DEFENDANT: Yes, ma'am.

¶38. Again, the hearing concluded with the trial judge stating that if Edwards did not like his attorney then he would represent himself. In addition, the trial judge reiterated that Edwards had a right to represent himself, although she would not recommend it.

¶39. At trial, Edwards did not participate in the questioning of witnesses or any other aspect of the trial

other than to state his decision not to testify on the record. At the Motion for New Trial hearing, Edwards stated that he wanted to represent himself. Again the trial court warned Edwards against such action but allowed him to present and participate in the hearing. The trial court judge had another lengthy discussion with Edwards concerning his assertion that he had appealed his case to the Supreme Court and explaining the need to have a ruling on the Motion for New Trial. The trial court listened to Edwards's main argument at the hearing of whether a shed was part of a dwelling. In addition, the trial court heard the arguments previously prepared in the Motion for New Trial by defense counsel.

¶40. The Court has reviewed the specific instances in the record and looked at the entire context of the interactive discussion between the trial court judge and Edwards. In the July 1998 hearing, Edwards appeared reluctant to relinquish his right to an attorney and proceed pro se. In the November 1998 hearing, Edwards stated he was comfortable with the defense counsel. At trial, Edwards did not participate in the proceedings but rather relied upon defense counsel to conduct the trial on his behalf. At the Motion for New Trial hearing, Edwards participated in the hearing to a greater extent than any of the other participants.

¶41. Edwards's assertion that he was denied the right of self representation is without merit. The record reflects that he agreed to have the assistance of counsel at the pre-trial hearings. In fact, defense counsel conducted the entire trial. At the post-trial hearing, Edwards participated in the hearing and expressed all his concerns to the trial court.

¶42. As to Edwards's assertion that the trial court applied the incorrect standard of legal competency instead of mental competency, this Court finds the complaint without merit. Edwards is correct in stating that this Court does apply a mental competency standard to determine whether a defendant knowingly and intelligently waves the right to counsel. ***Howard***, 701 So.2d at 280. Reviewing the record within the proper context of the statements, it is clear that the trial court was only in the process of warning Edwards at the post-trial Motion for New Trial hearing against self-representation. However, the record also reveals that Edwards fully participated in the hearing expressing all his arguments directly to the trial judge.

> **III. IN THAT HE WAS SENTENCED TO SERVE A TERM OF 25 YEARS IN THE MDOC FOR ENTERING A SHED TO STEAL A FISHING POLE, EDWARDS IS ENTITLED TO A PROPORTIONALITY ANALYSIS AS DICTATED BY *SOLEM V. HELM*. UNDER THIS ANALYSIS, HIS SENTENCE FAILS TO COMPORT WITH ARTICLE 3, SECTION 28 OF THE MISSISSIPPI CONSTITUTION AND THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

¶43. Edwards asserts that his sentence of twenty-five years imprisonment is disproportionate to the crime committed and warrants a proportionality test under ***Solem v. Helm***, 463 U.S. 277, 291, 103 S.Ct. 3001, 3011, 77 L.Ed.2d 637 (1983). Specifically, Edwards asserts that he entered a shed with no ingress to the house, however, he did not take anything even though he may have intended to steal a fishing pole. In addition, Edwards submitted information pertaining to similar crimes in Jackson and the bordering Harrison County for comparison.

¶44. This Court finds that it is not bound to analyze this issue pursuant to ***Solem***. While discussion on this issue was pursued in the sentencing phase of the trial, Edwards failed to address and include the specific statistical information, attached to his brief, into the record. In ***Hennington v. State***, 702 So.2d 403 (Miss. 1997), this Court held that the appellant has the responsibility to present a trial record sufficient to undergird his assignments of error. ***Hennington***, 702 So.2d at 409 (citing ***Winters v. State***, 473 So.2d

452, 457 (Miss.1985); *Queen v. Queen*, 551 So.2d 197, 199 (Miss.1989)).

¶45. However, even if the statistical information had been presented to the trial court, this Court finds the issue is without merit. In *Fleming v. State*, 604 So.2d 280, 302 (Miss. 1992), this Court held that the general rule in Mississippi is that a sentence that does not exceed the maximum term allowed by the statute, cannot be disturbed on appeal. However, this Court will review a sentence that allegedly imposed a penalty that is disproportionate to the crime. *Id*. "Sentencing is within the complete discretion of the trial court and not subject to appellate review if it is within the limits prescribed by statute." *Walls v. State*, 718 So.2d 1107,1114 (Miss. 1998)(quoting *Hoops v. State*, 681 So.2d 521, 537 (Miss. 1996)).

¶46. The United States Supreme Court set forth a three-prong test for an Eighth Amendment proportionality analysis in *Solem* as follows:

> (i) the gravity of the offense and the harshness of the penalty;
>
> (ii) the sentence imposed on other criminals in the same jurisdiction; and
>
> (iii) the sentences imposed for commission of the same crime in other jurisdictions.

*Id.*

¶47. This Court noted, however, that *Solem* was overruled in *Harmelin v. Michigan*, 501 U.S. 957, 965-66, 111 S.Ct. 2680, 2686-87, 115 L.Ed.2d 836 (1991) "to the extent that it found a guarantee of proportionality in the Eighth Amendment. In light of *Harmelin*, it appears that *Solem* is to apply only when a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality.'" *Hoops v. State*, 681 So.2d at 538 (citations omitted). The appellate courts will not apply the three-prong disproportionality test when there is a lack of this initial showing. *Young v. State*, 731 So.2d 1120, 1125 (Miss. 1999); *Williams v. State*, 784 So.2d 230, 236 (Miss. Ct. App. 2000).

¶48. In a recent Court of Appeals case, *Williams v. State*, 784 So.2d 230, 236-37 (Miss. Ct. App. 2000), the defendant, convicted in Jackson County, filed a motion to supplement the record and an affidavit indicating that his sentence was disproportionate to sentences for similar crimes in Jackson and Harrison Counties in Mississippi and Mobile County, Alabama. *Id*. The motion was remanded by this Court to the trial court for consideration. *Id*. The trial court found that the documents from other judges and courts jurisdictions to be irrelevant. *Id.* The Court of Appeals affirmed the trial court's ruling stating:

> We hold that a comparison of the crime to the sentence imposed does not lead to an inference of gross disproportionality. Therefore, the statistics, contained in Williams's supplement, are irrelevant. They become relevant only after an initial finding of an inference of gross disproportionality.

*Id*. at 237.

¶49. Edwards asserts that his sentence was disproportionate to the crime charged. A jury in Jackson County convicted Edwards of burglary of a dwelling. This crime carries a maximum sentence of twenty-five years imprisonment. In addition, during the sentencing phase of the trial, Edwards was determined to be a habitual offender pursuant to Miss. Code Ann. § 99-19-81 (2000). That statute provides:

> Every person convicted in this state of a felony who shall have been convicted twice previously of any

felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

The sentencing phase of the trial revealed that Edwards had sixteen prior convictions. Clearly, if Edwards was found guilty of burglary of a dwelling then he could have been sentenced to twenty-five years imprisonment for this crime as a habitual offender within the guidelines set forth in the applicable statutes. This Court finds that there was no abuse of discretion by the trial judge in sentencing Edwards. His sentence was within the limits set forth by the statute, and this issue is without merit.

### IV. EDWARDS WAS PUNISHED WITH THE MAXIMUM SENTENCE POSSIBLE FOR PROCEEDING TO TRIAL, RATHER THAN ENTERING A PLEA OF GUILTY TO THESE CHARGES, IN VIOLATION OF THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AS WELL AS ARTICLE 3, SECTIONS 14, 16 AND 31 OF THE MISSISSIPPI CONSTITUTION.

¶50. Edwards contends that his sentence was enhanced because he chose to have a trial by jury rather than accepting a plea bargain agreement. The circuit court sentenced Edwards to twenty-five years imprisonment, whereas prosecution offered a plea bargain for six years imprisonment. In addition, Edwards urges this Court to reconsider its ruling in *Fermo v. State*, 370 So.2d 933 (Miss.1979) because he alleges that it provides no effective bar to a defendant being punished for proceeding to trial. More specifically, Edwards alleges that *Fermo's* holding that a trial judge that remains aloof from the plea-bargain process proves that the accused was not punished for having a trial is irrelevant in present day courtrooms. Further, Edwards asserts that the record does not reflect that the trial court judge would have rejected the State's six-year plea recommendation.

¶51. Edwards relies upon *Temple v. State*, 498 So.2d 379, 381 (Miss. 1986) citing that "it is unpermissable [sic] for a trial judge to impose a heavier sentence based in whole or in part upon a defendant's exercise of his constitutionally protected right to a trial." Edwards urges this Court to at least modify *Fermo* so that it does not negate the *Temple* principle simply because a trial judge is not involved in the plea bargaining process.

¶52. As clarification, in part, for this issue, it is important to note that *Fermo* also contains the same language in its opinion as quoted by Edwards in *Temple*. In fact, numerous cases cite this principle. *See Johnson v. State*, 666 So.2d 784 (Miss. 1995); *Gillum v. State*, 468 So.2d at 864; *Williams v. State*, 784 So.2d 230, 237 (Miss. Ct. App. 2000). Further, this Court in *Temple* followed the same analysis as *Fermo*. In *Temple*, this Court affirmed an enhanced sentence by the trial judge even though the plea bargain, offer by the prosecution, was for a lesser prison term. *Temple*, 498 So.2d at 381. This Court further held that the comments by the trial court revealed that the judge was "aloof" from the plea negotiations, "circumspect" and "unbiased" pursuant to *Fermo*. *Id*. at 382. Therefore, this Court finds that Edwards's reliance upon *Temple* is somewhat misplaced in the sense that *Temple* and *Fermo* have been and continue to be in harmony with each other. In addition, case law from *Fermo* and it progeny is sound law that should not be modified in any manner.

¶53. In a recent Court of Appeals case, the same issue of an enhanced sentence was addressed. The Court

of Appeals in *Lawrence v. State*, 780 So.2d 652, 658 (Miss. Ct. App. 2001) stated the following: It is a defendant's right and a choice to trial by jury. No one forced him to go to trial to be judged by a jury of his peers. He chose to do so and this Court will not reverse the trial court's verdict and sentence because the defendant does not like the consequences of his choices.The Court of Appeals continued its analysis in *Lawrence*, relying upon *Taylor v. State*, as follows:

> In *Taylor*, the appellant argued that because he refused the offered plea bargain he was punished for demanding a trial. *Taylor v. State*, 741 So.2d 960 (Miss.Ct.App.1999). In citing *Reynolds v. State*, 585 So.2d 753, 756 (Miss.1991), the *Taylor* court agreed that "the imposition of a defendant's sentence is within the discretion of the trial court, and generally, this Court will not review the sentence if it is within the statutory limits." *Taylor*, 741 So.2d at 964. The court also held in *Taylor*, "[t]he court does not err in sentencing the defendant to a greater sentence than that which was offered in the plea bargaining process where the record reflects that the court remained aloof from the bargaining process or was unaware of the bargaining." Id. (citing *Temple v. State*, 498 So.2d 379, 381 (Miss.1986)).

In *Johnson v. State*, 666 So.2d 784, 797 (Miss. 1995), this Court held that a trial court "does not abuse its discretion in imposing a heavier sentence if the record reveals that the sentence was based on a presentence report and prior convictions." *Johnso*n, 666 So.2d 797 (citing *Gillum v. State*, 468 So.2d 856, 864 (Miss. 1985)). *See also Williams v. State*, 784 So.2d at 237.

¶54. The record reflects that Edwards refused the plea bargain even though his attorney urged him to accept the offer. The trial judge was not aware of any prior plea negotiations with Edwards. Only at the sentencing phase of the trial was the trial judge made aware of former negotiations. Both the State and Edwards addressed the plea negotiations in the sentencing arguments before the court. The sentencing phase of the trial revealed that Edwards had sixteen prior convictions. The trial judge stated in part at the sentencing hearing, the following:

> So, I found that the State has proven that you are, in fact, a habitual offender. And I do find and do believe that, based upon the facts of the case and your prior convictions, Mr. Edwards, that you should and you are hereby sentenced to serve twenty-five years in the Mississippi Department of Corrections as an habitual offender....

¶55. In this Court's opinion, Edwards's issue is without merit. The trial judge was not aware of previous plea negotiations, Edwards was proved to be a habitual offender, and the sentence of twenty-five years imprisonment was within the statutory guidelines. Edwards was aware that the plea offer by the State would be withdrawn if not accepted. The trial judge did not base the sentence upon Edwards's request for a trial. Instead, the sentence was based upon listening to the prosecution's and the defense's sentencing arguments, the facts of the case, and Edwards's prior sixteen convictions. Therefore, the trial judge did not abuse her discretion in the sentencing of Edwards. This issue is without merit

## **CONCLUSION**

¶56. For these reasons, the judgment of the Jackson County Circuit Court is affirmed.

**¶57. CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE OF TWENTY-FIVE (25) YEARS AS A HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT PAROLE, PROBATION, WORK RELEASE OR ANY OTHER PROGRAM AFFIRMED.**

**PITTMAN, C.J., BANKS AND McRAE, P.JJ., SMITH, MILLS, WALLER, COBB AND DIAZ, JJ., CONCUR.**