# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2012-KA-01947-COA

TYRUNE PATY A/K/A TYRUNE P. PATY A/K/A          APPELLANT
TYRUNE PATRICE PATY

v.

STATE OF MISSISSIPPI                                     APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 11/01/2012 |
| TRIAL JUDGE: | HON. LEE SORRELS COLEMAN |
| COURT FROM WHICH APPEALED: | OKTIBBEHA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES PHILLIP BROADHEAD |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF POSSESSION OF COCAINE IN AN AMOUNT GREATER THAN 0.1 GRAM BUT LESS THAN TWO GRAMS AND SENTENCED AS A SUBSEQUENT DRUG OFFENDER TO SIXTEEN YEARS IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FOUR YEARS SUSPENDED, TWELVE YEARS TO SERVE, AND FOUR YEARS OF POST-RELEASE SUPERVISION, AND TO PAY A FINE OF $2,400 |
| DISPOSITION: | AFFIRMED - 09/30/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., MAXWELL AND JAMES, JJ.**

**MAXWELL, J., FOR THE COURT:**

¶1.     In his trial for cocaine possession, Tyrune Paty chose to represent himself.  He was convicted and now seeks a new trial.  On the one hand, he claims the judge should not have granted his request to proceed pro se.  On the other hand, he accuses his appointed counsel—who was ordered to stay on as his procedural advisor—of interfering with his right to self-representation.

¶2.     Neither of Paty's propositions is supported by the record.  Instead, the record shows Paty, after being properly informed, knowingly and voluntarily elected to represent himself.  And his appointed counsel, in her role as advisor, ably assisted and enabled Paty to present his theory of defense.  Thus, no new trial is warranted.  We affirm.

### Background

### I.     *Paty's Decision to Represent Himself*

¶3.     Paty was indicted for possessing more than one-tenth but less than two grams of cocaine.  The court appointed public defender Stephanie Mallette as his counsel.  Mallette had previously represented Paty on a separate drug charge, for which Paty had pled guilty and was out on parole.  Apparently, Paty was dissatisfied with Mallette's handling of that case.  On July 24, 2012, Paty penned a letter to a circuit judge asking that Mallete be removed because she had mishandled his prior drug charge.  But the letter was written and sent to a different circuit judge than the one assigned to his present drug case.

¶4.     Trial was scheduled to begin on Tuesday, October 30, 2012.  The Friday before, Paty insisted Mallette file a motion to continue so he could "think over some things."  The motion was heard on Monday, October 29.  At the hearing, Mallette presented Paty's request and his

2

justification for seeking a continuance. But Mallette was candid with the court that she was prepared to go to trial and had no concrete reason to postpone. The judge denied a continuance.

¶5. Before the hearing ended, Mallette raised "the need to address the issue of whether [she was] representing Mr. Paty or he [was] representing himself." The judge responded that, since no request had been made, there was no ruling to make. Mallette then informed the judge that Paty had "intermittently changed his mind between representing himself and firing [her]." The judge turned to Paty and informed him that he was not going to appoint another public defender. Paty then made a host of accusations against Mallette. He accused her of forging his signature, "speed-ball[ing] over [him]," and threatening him during her representation in the other drug charge. Hearing this, the judge explained to Paty that this proceeding was not the proper forum to argue over the validity of his guilty plea in that other case. The hearing ultimately concluded with Paty seemingly satisfied to continue with Mallette representing him.

¶6. But by the very next day—the first day of trial—Paty had changed his mind. Before voir dire, at Paty's request, Mallette made an ore tenus motion to withdraw as Paty's counsel so he could represent himself. The judge then examined Paty. After providing Paty all the required information and warnings under Rule 8.05, the judge concluded on the record that Paty's decision to proceed pro se was knowing and voluntary. *See* URCCC 8.05. The judge then exercised his discretion to appoint Mallette as standby counsel to help Paty with procedural matters. *See id.*

3

## II.  *Paty's Defense Theory*

¶7.  At Paty's request, Mallette participated in voir dire.  But Paty opted to make his own opening statement.  He also cross-examined the State's witnesses—the two officers who arrested Paty after they found a bag of what appeared to be cocaine lying in plain sight in his vehicle and the director of the forensic lab who confirmed the substance was cocaine.

¶8.  Paty kept interrupting the trial, insisting something had been said during his preliminary hearing that would prove the officers had tampered with the evidence.  Several times he asked the judge for a transcript of that hearing.  But there was no transcript since no court reporter had been present.  Paty then tried an alternative—requesting that Mallette subpoena the municipal judge who had presided over the hearing.  To help resolve the issue, the municipal judge voluntarily appeared in the circuit court.  Outside the presence of the jury, the municipal judge proffered that he had no recollection of what he had asked the arresting officers at Paty's preliminary hearing.  Paty balked at his testimony, maintaining that the municipal judge had asked something important about the evidence in the preliminary hearing.

¶9.  At this point, Mallette intervened.  She told the court that she *did* remember what had happened at the preliminary hearing.  The municipal judge had asked one of the officers if the bag of cocaine was at the crime lab.  The officer responded that he did not know if the drugs had already been sent to the lab for analysis.  From this response, Mallette explained, Paty had formed his "conspiracy theory" that the officers had realized at the hearing they lacked evidence against Paty, so they used the cocaine from his previous case as evidence

4

in his new drug prosecution. Paty confirmed to the court that Mallette had accurately summed up his defense theory.

¶10. Mallette further explained that, as his procedural advisor, she had a duty to instruct him on how he could call her to testify about the preliminary hearing. But this would mean Mallette would have to first withdraw as his procedural advisor, leaving Paty without legal assistance. This would also confuse the jury, who had interacted with Mallette as Paty's counsel during voir dire. Even worse, should the State want to rebut Paty's theory, it would have to call Mallette too, as she was the only available witness to what happened at the preliminary hearing. And since Mallette's recollection was that officers' testimony at the preliminary hearing was consistent with their trial testimony, she was concerned that, should she be called as a witness, her testimony would likely help the State and hurt Paty.

¶11. At this point, the judge expressed concern about how to proceed. Paty was entitled to his defense theory and to impeach the officers with a prior inconsistent statement about the contraband. But the only apparent avenue through which to do this—Mallette's testimony—was riddled with problems.

¶12. In the end, it was Mallette who recalled that Paty's fiancée had also been at the preliminary hearing. His fiancée had been listed as a potential trial witness and thus had been sequestered from the trial proceedings. So if Paty wanted to purse his preliminary-hearing theory, he could call her to testify. Satisfied with this solution, the judge continued trial, asking Mallette to stay on as Paty's procedural advisor.

### III. *Paty's Conviction*

5

¶13. Paty decided to rest without calling his fiancée or any other witness. Mallette actively participated in the jury-instruction conference, making several objections to instructions unfavorable to Paty. Paty gave his own closing argument. And after deliberating, the jury returned with a guilty verdict. As this was his second drug offense, the court was authorized by statute to impose up to double the maximum penalty. Paty was sentenced to sixteen years, with twelve to serve and four suspended. The twelve years were ordered to run consecutively with the remaining twelve years on his prior conviction, which was no longer suspended due to Paty's second conviction.

¶14. Within ten days, Mallette filed a motion for a judgment of acquittal notwithstanding the verdict or a new trial. In her motion and at the hearing, Mallette was careful to preserve any points of error that appellate counsel may want to pursue. When that motion was denied, Mallette filed a timely notice of appeal before withdrawing as Paty's appellate counsel.[1]

**Discussion**

¶15. On appeal, Paty asserts he is entitled to a new trial—first, because he was "forced" into self-representation and, second, because Mallette's actions, both before and during trial, were so constitutionally deficient and unethical that they not only interfered with his Sixth Amendment right to self-representation but also were tantamount to a denial of due process. But after review, we find these bold assertions are unsupported. Instead, the record shows

---

[1] The Office of State Public Defender took over as Paty's appellate counsel. Paty's appellate brief was prepared with the assistance of two students at the University of Mississippi School of Law as part of their criminal-appeals clinic, supervised by Professor Phillip Broadhead.

that Paty made the decision to represent himself by himself. And he did so with his eyes open, fully advised of his right to counsel and the dangers of self-representation. The record also shows Mallette did not interfere with his self-representation or due-process rights.

### I.      Paty's Decision to Represent Himself

#### A.      Knowledge

¶16.    Paty first argues the circuit judge failed to follow Rule 8.05 when accepting Paty's decision to represent himself. *See* URCCC 8.05. Though Paty concedes the judge gave him all the necessary information under Rule 8.05,[2] he claims the record does not support the judge's finding that he had made a knowing and voluntary decision to proceed pro se.

¶17.    In arguing his decision was unknowing, Paty seems to equate the rule's requirement of a "knowing" decision of self-representation with "legal knowledge." In other words, Paty believes the judge could not have found he made a knowing decision because the record

---

[2] When a defendant states he wants to represent himself, Rule 8.05 mandates the judge conduct an on-the-record examination "to determine if the defendant knowingly and voluntarily desires to act as his/her own attorney." As part of this examination, the trial judge must inform the defendant about:

(1)    his right to an attorney, even if he cannot afford one,
(2)    his right to conduct his defense and assign whatever role he chooses to his attorney,
(3)    how the court's rules and procedures will not be relaxed for him just because he is not an attorney,
(4)    how proceeding pro se increases the likelihood of an unfavorable outcome, and
(5)    anything else the judge deems appropriate.

URCCC 8.05. If the defendant, after being so informed, still wants to proceed pro se, the judge must find on the record that the defendant's decision was knowing and voluntary.

shows he had no legal training. But the United States Supreme Court has held that "a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation[.]" *Faretta v. California*, 422 U.S. 806, 835 (1975). For purposes of assessing whether a decision to represent oneself was "knowingly and intelligently made," the level of the defendant's "technical legal knowledge" is "not relevant." Rather, what is relevant is whether the defendant was "made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.* (quoting *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279 (1942)).

¶18. Here, the record shows the trial judge was careful to ensure Paty was made aware of the dangers and disadvantages of self-representation, so that when Paty decided to proceed pro se, he did so with his eyes open.

> B.     Competency

¶19. Paty asserts the judge's determination was still erroneous because the judge did not conduct a separate competency hearing before allowing Paty to proceed pro se. Paty is correct that, "[i]n order for a defendant to knowingly and intelligently waive the right to counsel, the defendant must meet [the same] test for competency to stand trial." *Edwards v. State*, 800 So. 2d 454, 466 (¶33) (Miss. 2001). But Paty is wrong to suggest that a competency hearing is mandatory in every case. *See id.* at (¶34).

¶20. In *Edwards*, the Mississippi Supreme Court held that a trial judge may forego a competency hearing where no reasonable grounds exist to believe the defendant is insane.

8

*Id.* (citing URCCC 4.08 (governing competency hearings in general)). The decision whether reasonable grounds exist to believe the defendant may be incompetent "rests largely within the discretion of the trial judge." *Id.* Here, Paty has put forth no evidence to support that reasonable grounds existed for the judge to question Paty's mental competency to stand trial and, thus, his competency to represent himself. So we find no reversible error in the judge's decision to forego a competency hearing.

## II. Mallette's Assistance Pretrial

### A. Pro Se Motion to Remove

¶21. Next, Paty asserts that Mallette, during her time as appointed counsel, provided ineffective assistance because she "neglected her duty to raise [Paty's] *pro se* motion for substitution of counsel in a timely manner." (Emphasis added). What Paty is calling a "pro se motion" was his handwritten letter addressed to another circuit judge, who was not assigned to his case. While this letter was filed in the record, there is no indication that Mallette *knew* about the letter—or that Paty had directed Mallette to file and follow through with a motion to substitute counsel.

¶22. In *Roy v. State*, 878 So. 2d 84, 89 (¶23) (Miss. Ct. App. 2003), the defendant had likewise sent a handwritten letter to the court criticizing his court-appointed attorney. On appeal, the defendant blamed the trial judge for "failing to rule on his request to dismiss counsel and appoint new counsel." *Id.* But this court held that Rule 2.04, which imposes a duty on a movant to pursue his motion to a hearing or face abandonment, equally applied to pro se movants. *Roy*, 878 So. 2d at 89 (¶23) (applying URCCC 2.04). Thus, the failure was

9

Roy's for not pursing his pro se motion, not the court's for failing to rule. *Id.*

¶23. Applying the same logic as in *Roy*, since Paty admits he filed his "motion" pro se, the duty belonged to him to pursue this motion to a hearing. Thus, he cannot claim Mallette neglected "her" duty to pursue *his pro se* motion, particularly when there is no evidence she was aware of it.

### B.     Motion to Continue

¶24. While Paty does not raise the denial of his motion to continue as error, he refers to Mallette's conduct during the pretrial hearing as an example of how Mallette was acting as his "adversary," not his advocate. But all that Mallette did—after communicating Paty's wish to postpone his trial and his stated reasons in support—was to act as an honest officer of the court, telling the judge she was prepared for trial and could offer no legitimate concrete reason for why the trial should be continued.

¶25. Paty sees Mallette's response as disloyal and a violation of Mallette's ethical duties to him. But as Mallette told the court at the hearing, to act otherwise would have violated both her duty not to abuse legal procedure and her duty to be candid with the court. *See* Miss. R. Prof'l Conduct 3.1 & 3.3.[3] Thus, Paty has failed to show Mallette provided

---

[3] Under Mississippi Rule of Professional Conduct 3.1, "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and in fact for doing so that is not frivolous[.]" And under Rule 3.3(a)(1), "[a] lawyer shall not knowingly . . . make a false statement of material fact or law to a tribunal[.]" Also, though not directly applicable, we find Rule 11 of the Mississippi Rules of Civil Procedure instructive:

Every pleading or motion of a party represented by an attorney shall be signed

10

ineffective assistance of counsel at the pretrial hearing.

### III.  *Mallette's Performance as Procedural Advisor*

¶26.  Paty's main allegation against Mallette is that she—after shifting roles to procedural advisor—interfered with his rights to self-representation and due process. Paty latches on to the judge's statement that he was "concerned about whether the trial can go forward at this point." Paty argues that, based on this concern, the judge had no other choice but to *sua sponte* declare a mistrial.

¶27.  But Paty's argument misinterprets the cause of the judge's concern. Paty attributes the source of this concern to Mallette's "volunteering" to be a witness for the State. However, the record is clear that this is simply not what happened. Mallette did not offer to be a witness for the State. Instead, she was concerned about the problems associated with advising Paty that he could call her as a witness to testify about what happened at the preliminary hearing—the main problem being her testifying would very likely be more helpful to the State than Paty. Thus, the judge's "concern[] about whether the trial can go forward at this point" was his shared concern that Paty could not present his theory of defense without calling Mallette as a witness—a concern that was alleviated when he learned

---

by at least one attorney of record in that attorney's individual name[.] . . . The signature of an attorney constitutes a certificate that the attorney has read the pleading or motion; that to the best of the attorney's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay.

M.R.C.P. 11.

Paty's fiancée was equally available to testify.

¶28.    The transcript does not show the judge was worried, as Paty contends, that Mallette's actions had led to a breakdown of due process.  And from our review of the record, neither are we.  While Paty also accuses Mallette of "obstructing" his communication with the judge and "releasing privileged information," the record does not support these charges.  Instead, the record shows Mallette served as Paty's interpreter of his defense, if you will—actually *facilitating* Paty's communication with the judge.  Had Mallette not articulated Paty's theory of defense, the court would not have even indulged Paty with a hearing about what went on at the preliminary hearing.  And while the judge did caution Mallette, when explaining Paty's defense theory, not to reveal any privileged information, Paty is wrong to equate the court's warning with an actual breach by Mallette—especially when the record confirms Mallette only repeated what Paty had already said in front of the State during plea negotiations.

¶29.    Bottom line, we find nothing in Mallette's actions that should have prompted the trial judge to declare a mistrial sua sponte.  While Paty tries to compare his case to *Stewart v. State,* 229 So. 2d 53, 56 (Miss. 1969), there are no similarities to be drawn.  In *Stewart,* the defense lawyer—who was the only counsel, as the defendant there had no inkling toward self-representation—did *nothing*.  No objections.  No cross-examinations of witnesses.  Nothing.  And because "the case ha[d] progressed to a point when it [was] apparent, or should [have been] apparent, that the attorney for the defendant [was] either incompetent or [was] doing nothing to represent the interest of the defendant," the supreme court held that the court should have sua sponte intervened to ensure the defendant received a fair trial.  *Id.*

12

Here, Mallette conducted voir dire, gave procedural advice when asked, assisted in hearings outside of the presence of the jury, submitted and objected to jury instructions, filed and argued a post-trial motion, and preserved Paty's right to appeal. So *Stewart*'s instruction that a judge should intervene when an appointed attorney does nothing for his client does not apply.

¶30.    Finding no error, we affirm the judgment of conviction and sentence.

¶31.    **THE JUDGMENT OF THE CIRCUIT COURT OF OKTIBBEHA COUNTY OF CONVICTION OF POSSESSION OF COCAINE IN AN AMOUNT GREATER THAN 0.1 GRAM BUT LESS THAN TWO GRAMS AND SENTENCE AS A SUBSEQUENT DRUG OFFENDER OF SIXTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FOUR YEARS SUSPENDED, TWELVE YEARS TO SERVE, AND FOUR YEARS OF POST-RELEASE SUPERVISION, AND TO PAY A FINE OF $2,400, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO OKTIBBEHA COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, FAIR AND JAMES, JJ., CONCUR.**

13