724 So.2d 1089 (1998)
James WILKERSON, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-01005 COA.
Court of Appeals of Mississippi.
December 18, 1998.
*1090 ATTORNEY FOR APPELLANT: EDMUND PHILLIPS.
ATTORNEYS FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL BY: CHARLES MARIS.
Before THOMAS, P.J., and COLEMAN and HINKEBEIN, JJ.
THOMAS, P.J., for the Court:
¶ 1. James Wilkerson appeals his conviction of burglary, raising the following issues as error:
I. THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE APPELLANT'S CONFESSION.
II. THERE WAS A FATAL VARIANCE BETWEEN THE PROOF AND THE INDICTMENT.
III. THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. In July 1996, Bertha Thrash was an elderly woman who owned a home in Newton County, Mississippi. She lived at this home for about four months out of the year when a daughter came and stayed with her. The other eight months of the year Thrash was taken care of by another daughter, Syble Sistrunk. Thrash was not presently living in her home in July 1996.
¶ 4. Around noon on July 17, 1996, Bob Boykin was driving by Thrash's house. Boykin saw James Wilkerson, someone he recognized and could name, walking out of the driveway of the property. Knowing that currently no one was living at the house, Boykin decided to relate what he saw to Bud Jones. *1091 At the time Jones was looking after the house, mowing the yard and keeping an eye on things.
¶ 5. Jones informed Sistrunk about what Boykin had told him. Jones, his wife, Sistrunk, and her husband met at Thrash's home. The front door was discovered opened. Upon further investigation, the back window was found open, and its screen was missing. The back door also contained a small hole through it as if someone had attempted to punch out the lock. After searching the house, they found a television missing. The incident was reported to Sheriff Jackie Knight.
¶ 6. After talking to Boykin, Sheriff Knight arrested Wilkerson and his father. Later at the station house, Wilkerson, after signing a waiver of rights form, gave a written confession stating he tried to enter the home through the back door and was unable, but managed to enter through the window. The confession also stated that Wilkerson took the television and pawned it. Wilkerson produced a pawn ticket which led to the recovery of the television. Wilkerson was indicted for burglary. Wilkerson's father was never charged with any crime.
¶ 7. At trial, Wilkerson testified that he did not commit the crime and attempted to suppress his written confession on the basis that it was coerced. Wilkerson testified that Sheriff Knight threatened to prosecute his father if he did not confess. Sheriff Knight denied this, and the confession was allowed into evidence. Wilkerson further testified that on the day in question he was out with his father picking up cans. Wilkerson stated that he went to pick up a can near Thrash's driveway but was never directly on the driveway. He stated that he found the television on the side of the road near Thrash's house and then took the television and pawned it. Wilkerson's father testified and corroborated his son's defense.
¶ 8. Wilkerson was found guilty and was sentenced to seven years in the custody of the Mississippi Department of Corrections, to pay a fine of $2,000, and to pay court costs. From this decision, this appeal ensued.

ANALYSIS

I.

THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE APPELLANT'S CONFESSION.
¶ 9. Wilkerson asserts that the trial court erred in failing to suppress his written confession. He claims that Sheriff Knight threatened to imprison his father if he did not confess. Wilkerson argues that Sheriff Knight had no reason to arrest his father other than to motivate him to confess. For these reasons. Wilkerson alleges that his confession was involuntary and thus inadmissible. Miller v. State, 243 So.2d 558, 559 (Miss.1971). Furthermore, Wilkerson asserts that the State has the burden to prove a confession voluntary beyond a reasonable doubt. Rhone v. State, 254 So.2d 750, 754 (Miss.1971). According to Wilkerson, the absence of a ground by the sheriff to arrest his father provided that reasonable doubt.
¶ 10. Determining whether a confession was freely and voluntarily given is the function of the trial court sitting as the finder of fact. Layne v. State, 542 So.2d 237, 239 (Miss.1989). The trial court must determine "whether the accused has been adequately warned, and whether, under the totality of the circumstances, he has voluntarily and intelligently waived his privilege against self-incrimination." Id. (citations omitted). "The State has the burden of proving all facts prerequisite to the admissibility of a defendant's confession beyond a reasonable doubt." Blue v. State, 674 So.2d 1184, 1204 (Miss.1996). Our review is limited where the trial court has denied a motion to suppress the confession of a defendant. We "will reverse the trial court's decision only if the trial court's ruling `is manifestly in error or contrary to the overwhelming weight of the evidence.'" McGowan v. State, 706 So.2d 231, 235 (Miss.1997) (citations omitted).
¶ 11. During the trial, the court conducted a suppression hearing outside the presence of the jury to determine whether Wilkerson's confession was admissible. On direct examination, Sheriff Knight testified *1092 that he advised Wilkerson of his rights. He also testified that he read Wilkerson his rights from a waiver of rights form and had Wilkerson read the same before signing. Sheriff Knight testified that Wilkerson signed the form in his presence and that the signing was not made under any threats or promises. Sheriff Knight further testified that Wilkerson did not appear to be intoxicated, on any type of drugs or medication. Sheriff Knight testified that after Wilkerson was fully informed of his rights that he gave a written confession. Again, Sheriff Knight testified that the confession was not made under any threats or promises, and Wilkerson did not appear intoxicated or on drugs. According to Sheriff Knight, Wilkerson at no time asked for a lawyer or that he wished to stop with the writing of the confession.
¶ 12. On cross-examination, Sheriff Knight was specifically asked if he promised Wilkerson his father would not be prosecuted if he cooperated with him and sign the statement. Sheriff Knight responded emphatically "I did not." On direct examination, Wilkerson testified that he wrote the statement "to keep my dad from going to Parchman." He denied having any knowledge of what he had written in the statement and claimed to only have written what Sheriff Knight told him to write.
¶ 13. After having reviewed the signed waiver of rights form and the signed written confession and having heard both Sheriff Knight and Wilkerson, the trial court concluded that the defendant freely and voluntarily waived his rights, and with knowledge of his rights, made a statement of admission. Based on the record before us, sufficient evidence existed to support the trial court's ruling. Therefore, it was not manifestly in error to deny Wilkerson's motion to suppress his confession.

II.

THERE WAS A FATAL VARIANCE BETWEEN THE PROOF AND THE INDICTMENT.
¶ 14. Wilkerson was indicted and convicted under Miss.Code Ann. § 97-17-23 (Rev.1994) (burglary; inhabited dwelling; breaking in at night while armed with deadly weapon). Wilkerson argues that there was a fatal variance between the statute and indictment on one hand and the proof on the other hand, in that the statute proscribes and the indictment describes a burglary of a dwelling house, and the uncontroverted evidence was that the building was unoccupied. Wilkerson asserts that proof was not sufficient to sustain the charge of the indictment.
¶ 15. It would seem that Wilkerson's basic contention under this assignment is two fold. First, that since Thrash was not physically present in her house when it was burglarized the house cannot be considered a dwelling under the statute. Next, that since Thrash was not currently living in her house at the time of the burglary the house cannot be considered a dwelling under the statute. Therefore, Wilkerson claims the State failed to prove an essential element of the crime charged.
¶ 16. Under Miss.Code Ann § 97-17-23 (Rev.1994) proof that the house was occupied at the time of the burglary is not required. Miss.Code Ann. § 97-17-23 (Rev. 1994) states as follows:
Every person who shall be convicted of breaking and entering the dwelling house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether there shall be at the time some human being in such dwelling house or not, with intent to commit some crime therein, shall be punished by imprisonment in the Penitentiary not less than three (3) years nor more than twenty-five (25) years.
(emphasis added).
Clearly, Thrash's presence in the house at the time of the burglary was not necessary to convict under the statute.
¶ 17. To determine whether a place is to be considered a dwelling, our supreme court has stated that "[t]he intention of the residents is the material consideration." Robinson v. State, 364 So.2d 1131, 1134 (1978). In a case similar to the one at bar, our supreme court held that a house retained its status as a dwelling even though its occupant was forced to stay in a nursing home. Course v. State, *1093 469 So.2d 80, 82 (Miss.1985). In Course, the owner of the house entered a nursing home in August and her house was burglarized the following October. Id. at 81. However, all of the owner's personal possessions had remained at the house, and the owner intended to return when her health permitted. Id. at 82. Our supreme court concluded, "we are of the opinion that Mrs. Eubanks' house had retained its status as a dwelling during her forced stay in a nursing home." Id.
¶ 18. The evidence at trial clearly showed that Thrash lived at the house in question four months out of the year. She received her mail there and kept personal property there. Thrash's clear intention was to return to the house. Her house did not lose its characteristic as a dwelling simply because Thrash did not live there full time. This assignment of error is without merit.

III.

THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 19. Wilkerson argues that the State has the burden of proving him guilty beyond a reasonable doubt. Wilkerson asserts that he and his father related a consistent tale of finding the television near the house not far from the road. Wilkerson maintains that if this unrebutted tale is true, then he is innocent. Therefore, the tale provides reasonable doubt of Wilkerson's guilt.
¶ 20. In arguing that the verdict was against the overwhelming weight of the evidence, Wilkerson has failed to isolate any specific error on the part of the trial court. However, since Wilkerson filed a motion for a new trial, we will assume that Wilkerson intended to argue that the trial court committed reversible error in failing to grant that motion. A motion for a new trial tests the weight of the evidence rather than its sufficiency. Butler v. State, 544 So.2d 816, 819 (Miss.1989). The Mississippi Supreme Court has stated:
As to a motion for a new trial, the trial judge should set aside the jury's verdict only when, in the exercise of his sound discretion, he is convinced that the verdict is contrary to the substantial weight of the evidence; this Court will not reverse unless convinced the verdict is against the substantial weight of the evidence.
Id. (quoting Russell v. State, 506 So.2d 974, 977 (Miss.1987)).
¶ 21. The lower court has the discretionary authority to set aside the jury's verdict and order a new trial only where the court is "convinced that the verdict is so contrary to the weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice." Roberts v. State, 582 So.2d 423, 424 (Miss.1991) (citations omitted). Based on the record before us, the evidence was sufficient to allow the case to go to the jury, and the jury's verdict was not against the overwhelming weight of the evidence. This assignment of error is without merit.
¶ 22. THE JUDGMENT OF THE NEWTON COUNTY CIRCUIT COURT OF CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE OF SEVEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FINE OF $2,000 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO NEWTON COUNTY.
BRIDGES, C.J., McMILLIN, P.J., and COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, PAYNE and SOUTHWICK, JJ., concur.