952 So.2d 1031 (2007)
Jimmy Wayne YOUNG, Appellant
v.
STATE of Mississippi, Appellee.
No. 2006-CP-00114-COA.
Court of Appeals of Mississippi.
March 27, 2007.
*1032 Jimmy Wayne Young, appellant, pro se.
Office of the Attorney General by Billy L. Gore, attorney for appellee.
Before KING, C.J., CHANDLER, ISHEE and CARLTON, JJ.
CARLTON, J., for the Court.
¶ 1. Jimmy Wayne Young entered a guilty plea in the Itawamba County Circuit Court for the crimes of burglary of a dwelling and grand larceny. He now challenges the validity of the indictment, his plea, and the effectiveness of his counsel. Finding no error, we affirm.

FACTS
¶ 2. On July 20, 2004, an Itawamba County grand jury returned a three count indictment against Young for the crimes of burglary of a dwelling and two counts of grand larceny. Miss.Code Ann. § 97-17-23 (Rev.2006) (burglary of a dwelling statute carrying a maximum imprisonment penalty of twenty-five years); § 97-17-41 (Rev.2006) (grand larceny statute). Due to prior felony convictions, Young was also charged as a recidivist. Miss.Code Ann. § 99-19-81 (Rev.2000) (requiring a felon convicted for a third time to receive and serve the maximum sentence).
¶ 3. On January 25, 2005, Young entered a guilty plea to the charges of burglary of a dwelling and one count of grand larceny. In exchange for his plea the additional count of grand larceny and the habitual status charges were retired to the files, and the State made a lenient sentence recommendation. The trial judge sentenced Young, according to the recommendation of the State, to twenty years, eight to serve, twelve suspended, for burglary of a dwelling, and ten years suspended for grand larceny. Young is now dissatisfied by the circumstances under which his plea was offered and challenges his conviction and sentence through the arguments itemized and addressed below. His appeal has been assigned to this Court.

DISCUSSION
1. Validity of Indictment
¶ 4. Young argues that the indictment charging him with burglary of a dwelling is faulty because the structure did not qualify as a dwelling. Young reasons that, as a matter of law, the most serious crime for which he could be charged was burglary of *1033 a building other than a dwelling. Miss. Code Ann. § 97-17-23 (Rev.2000) (carrying a maximum imprisonment penalty of seven years). He concludes that his plea was invalid because he was unaware that he was charged with the wrong crime and entered a guilty plea for a crime for which he could not be charged. His main contention is that the State never referred to the building as a "dwelling" or "residence." He cites only to the above mentioned statutes in support of his position.
¶ 5. The State contends that this issue is waived assuming Young entered a valid guilty plea. Young's argument that his plea is invalid hinges upon whether the alleged defect in the indictment is actually a defect. To avoid a circular discussion of the issues raised, we first address whether the indictment was defective.
¶ 6. Young argues that the State charged him with the enhanced crime of burglary of a dwelling when he should have been charged with the lesser offense, burglary of a building, other than a dwelling. Of importance is that the State was not required to advance evidence to prove the building was a dwelling. By entering a guilty plea, Young not only confessed to the actions as charged in the indictment but also stipulated that the prosecution did not need to advance evidence of guilt. Florida v. Nixon, 543 U.S. 175, 187-88, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004) (quoting Boykin v. Alabama, 395 U.S. 238, 242-43, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)). Young acknowledged at the plea hearing that he knew his plea would waive the requirement for the State to prove the elements of the charges against him. He also confessed that he did "break and enter a certain dwelling owned and occupied by [the burglary victims]. . . ."
¶ 7. Even so, we read Young's pro se brief broadly and, therefore, conclude that his post-conviction argument fits within the post-conviction relief statute as challenging the jurisdiction of the trial court to accept his plea due to a defective charging document. Miss.Code Ann. § 99-39-5(1)(a) (Rev.2000); Conerly v. State, 607 So.2d 1153, 1156 (Miss.1992) (entering a guilty plea waives the right to challenge many errors but does not waive subject matter jurisdiction); Jefferson v. State, 556 So.2d 1016, 1021 (Miss.1989) (trial courts obtain subject matter jurisdiction over an offense by the defendant being served with an indictment charging the essential elements of a crime).
¶ 8. The sole question presented under this issue is whether the structure from which items were taken qualifies as a dwelling under Section 97-17-23. Young concedes in his brief that the structure is a "hunting club cabin." Count one of the indictment charged that Young did:
wilfully, feloniously and burglariously break and enter a certain dwelling owned and occupied . . . with the felonious and burglarious intent to take, steal and carry away the goods, chattels and personal property of the said [owners]. . . .
¶ 9. In 2001, the Mississippi Supreme Court reviewed case law in discussing the question of "whether a building [was] characterized as a dwelling." Edwards v. State, 800 So.2d 454, 461-62(¶ 11) (Miss. 2001) (shed attached to carport and house was a dwelling). In Edwards, the court stated that the "intention of the dweller is considered to be material in the Court's determination of whether a building is characterized as a dwelling pursuant to the burglary statute." Id. The court then summarized previously decided cases on this issue, including:

Gillum v. State, 468 So.2d [856, 859 (Miss.1985)] (weekend home where owners spent every second or third weekend *1034 and had food, clothing and other necessities was a dwelling); Course v. State, 469 So.2d 80 (Miss.1985) (home was dwelling house even though victim lived in nursing home for the past few months where she kept personal possessions in the home and intended to return to the home if her health improved); Washington v. State, 753 So.2d 475 (Miss.Ct.App. 1999) (building that owner occupied for ten to fifteen weeks a year to visit family in Mississippi was a dwelling); Wilkerson v. State, 724 So.2d 1089 (Miss.Ct. App.1998) (house was dwelling where owner lived four months a year, received mail and kept personal items). But see Pool v. State, 764 So.2d 440 (Miss.2000) (farmhouse not considered dwelling where owner moved to an apartment four years prior to alleged burglary and there was no evidence that owner intended to return to the farm); Woods v. State, 186 Miss. 463, 191 So. 283 (1939) (newly erected home intended as a dwelling but not yet occupied is not considered a dwelling house).
Id.
¶ 10. Determining whether a building is a dwelling under the burglary statute is fact intensive, as illustrated in Edwards and subsequent cases. See Campbell v. State, 883 So.2d 115, 118-19 (¶¶ 3, 11) (Miss.Ct.App.2004) ("deer camp" "cabin" with broken windows was a dwelling where building was furnished, had running water, electricity, and was known to be suitable for human habitation).
¶ 11. In the present case, the record reflects that the cabin was fully furnished, contained frozen meat, common food items, functioning appliances, cooking supplies, eating utensils, clothing, numerous hunting accessories, and other living comforts and necessities. Of importance is that no evidence was presented about use of the cabin and intent of the owners because no such evidence was required in the wake of Young's guilty plea. From the information in the record, and in light of the conclusions in Campbell, Gillum, Course, Washington, and Wilkerson, there is more than enough information to conclude that this cabin is a dwelling for purposes of the burglary of a dwelling statute.
2. Validity of Guilty Plea
¶ 12. Young concedes that he was "fully advised of all the aspects of the case, including the nature and elements of the charge, that the court advised [him] of the charges against him; and asked if [he] understood the charge." Young's sole argument that his plea was not valid relies upon the assumption that he was improperly charged with burglary of a dwelling.
¶ 13. The record supports that Young entered his plea "with sufficient awareness of the relevant circumstances and likely consequences." Bradshaw v. Stumpf, 545 U.S. 175, 183, 125 S.Ct. 2398, 162 L.Ed.2d 143 (2005) (quoting Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)). Having already found that the cabin was a dwelling, there is no merit to this issue.
3. Effectiveness of Counsel
¶ 14. Young argues that his plea is the result of ineffective assistance of counsel. Young relies on case law to conclude that his attorney allowed him to bargain for an illegal sentence because Young was improperly charged with burglary of a dwelling. Baker v. Barbo, 177 F.3d 149 (C.A.3 N.J.1999). Other allegations include that Young would have insisted on going to trial had he not been surprised by the proceedings, had his counsel challenged the indictment, subpoenaed witnesses, and otherwise investigated the circumstances surrounding the charges. In essence, Young believes that his counsel *1035 failed to notice that Young was charged with a crime for which he could not be prosecuted, and that a jury would have returned a verdict of not guilty.
¶ 15. Claims of ineffective assistance of counsel in a post-conviction relief setting do not allow us to review some of the allegations Young makes, including whether certain statements offered in his support would be admissible as evidence at a trial. We review Young's claim under a two-part inquiry of whether counsel's performance was deficient, and whether that deficiency prejudiced Young. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The objective to this review is to determine whether the conduct of counsel "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686, 104 S.Ct. 2052.
¶ 16. With that objective in mind, we determine whether the fairness of the proceedings through which Young entered his guilty plea were undermined by errors of his counsel. We note, however, that Young did not have a constitutional right to errorless counsel. Branch v. State, 882 So.2d 36, 52(¶ 26) (Miss. 2004). Our review is mindful that when "gauging counsel's performance, we must make every effort `to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" Id. at (¶ 27) (quoting Stringer v. State, 454 So.2d 468, 477 (Miss.1984)). We also consider the "totality of the circumstances" when deciding if counsel's actions were deficient. Swington v. State, 742 So.2d 1106, 1114(¶ 22) (Miss.1999) (quoting McQuarter v. State, 574 So.2d 685, 687 (Miss.1990)).
¶ 17. The record reflects that Young faced prosecution of multiple felony charges as a recidivist criminal. Upon conviction, Young would have had to serve a mandatory maximum sentence and serve each day of that sentence. At the plea hearing, Young assured the trial judge that nobody had threatened him but that his plea was voluntary. Young also assured the trial judge that nobody had pressured or forced him to submit his plea, and that nobody told him he had to plead guilty. Young was advised that he was waiving certain rights, including the right to a jury trial.
¶ 18. When the trial judge asked Young if he was satisfied with the legal services and advice given to him by his attorney, Young responded, "yes, sir, very." Young then communicated to the trial judge that he thought his attorney properly advised him before pleading guilty and represented Young's best interest in handling this case. Finally, the trial judge asked Young if he had any questions about what was happening prior to accepting Young's plea. Young did not ask any question or raise any concern about the many allegations he now makes.
¶ 19. Young requested that he be allowed to delay beginning his sentence until after the weekend because his grandson's first birthday was on Sunday. Young's counsel stated:
Jimmy here did not know anything about an offer or the plea. I think he understood from talking with me that the case was set on Friday and probably would be continued to the next term of court. This morning I contacted his father, who came up and we talked, and then his father in the meantime was able to get in touch with Jimmy. I respectfully ask the Court to allow him to stay at home until Monday to be with his [grandson on his] grandson's birthday and to get a few things, you know, ready before he leaves.
*1036 Young was allowed to report to the sheriff by 6:00 p.m. on the following Monday.
¶ 20. Young relies on this statement by his counsel to argue that he was surprised by the proceedings. This statement that Young may have misunderstood his attorney and found out about an offer to enter a guilty plea a short time prior to the court session does not mean that Young did not willingly accept such a lenient sentence rather than possibly subject himself to a mandatory quarter of a century in prison. In his brief, Young states that he "would have insisted [on] going to trial" if his attorney had done more to prepare his defense. Such a statement supports the conclusion that Young willingly accepted the offer to enter his guilty plea, having discussed the matter with his father, and concluding that the best option was to avoid a jury trial. We have no doubt that the trial judge would have granted a continuance or rejected Young's plea had Young raised or even alluded to his present concerns when the trial judge asked him a litany of questions during the plea hearing.
¶ 21. The record demonstrates that the State had amounted a significant amount of evidence against Young. It is possible that there may have been a short time for Young to decide on entering a guilty plea, or that he was confused about the exact scheduling of the criminal proceedings against him. It is also possible that Young decided to enter his guilty plea when faced with the evidence of the State, and the severe consequence he would face upon conviction. Much of what Young states is properly characterized as mere allegations. Considering these allegations and the totality of the circumstances, we are persuaded that Young was not subject to constitutionally inadequate counsel.
¶ 22. Upon reviewing the record and addressing Young's concerns we conclude that the trial court did not err in summarily dismissing Young's motion for post-conviction relief.
¶ 23. THE JUDGMENT OF THE ITAWAMBA COUNTY CIRCUIT COURT DENYING POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO ITAWAMBA COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.